UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| CAROL CHALK | ) |
| | ) |
| Petitioner, | ) Case Nos.    1:13-cr-133-HSM-SKL-2 |
| | )                  1:14-cv-306-HSM |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION

Petitioner Carol Chalk ("Petitioner") filed a *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 450], with a supporting memorandum [Doc. 451] and supplement [Doc. 463].[1]  The United States of America (the "government") filed a response in opposition [Doc. 499].  This matter is now ripe.  For the reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be **DENIED**.

**I.    BACKGROUND**

Pursuant to a written Plea Agreement, Petitioner pleaded guilty to a lesser included offense of conspiring to distribute cocaine base ("crack"), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) [Docs. 173, 347].  As stated in the Presentence Investigation Report ("PSR"), Petitioner sold a total of 117 grams of crack cocaine to a confidential informant in three controlled buys [Doc. 347 at Page ID # 1047 at ¶ 9] and was a "significant source of cocaine powder and crack in the Chattanooga" area, [*Id*. at ¶ 6],  A court-authorized wiretap revealed Petitioner used

---

[1] All citations to the district court record are to the underlying criminal case.

co-defendant Connie Moore to complete drug transactions and collect money owed for drugs [*Id.* at ¶ 10 ("Phone conversations targeted during the wiretap indicate that Chalk used Connie Moore to complete transactions in the amounts of $20 and $30 and to pick up money owed for drugs. Moore lived at Chalk's residence and relied upon Chalk for a place to live. She also received small amounts of crack for her personal use as payment for her role.")]. Petitioner stipulated that she was "responsible for distributi[ng] . . . at least 280 grams of cocaine base during the course of the charged conspiracy." [Doc. 173 at Page ID # 367 & Doc. 347 at Page ID # 1047 at ¶ 11]. As such, her base offense level was 32 [Doc. 347 at Page ID # 1048 at ¶ 16], and with a two-level role enhancement and a three-level reduction for acceptance of responsibility, her total offense level was 31 [*Id.* at Page ID # 1048-49 at ¶¶ 19, 23-25]. Given her criminal history score of zero, she had a criminal history category of I [*Id.* at ¶ 31], and the corresponding range for incarceration under the applicable United States Sentencing Guidelines Manual (the "Guidelines" or "U.S.S.G.") was 108 to 135 months' imprisonment [*Id.* at Page ID # 1052 at Page ID # ¶ 50].

Petitioner requested a below-Guidelines sentence of 46 months in light of several factors, including her diminished mental capacity [Doc. 334]. The Addendum to the PSR acknowledged Petitioner's "mild retardation," but noted Petitioner had not established her eligibility for a departure under U.S.S.G. § 5H1.3 [Doc. 348 at Page ID # 1056-57].

As part of the plea agreement, the parties explicitly acknowledged a proposed Guidelines amendment—which later became Amendment 782—to reduce by two levels the base offense level for most drug offenses [Doc. 173 at Page ID # 369, at ¶ 8]. Although the proposed amendment had not yet been adopted by the Sentencing Commission, the government agreed that it would not oppose a two-level downward variance on that basis. In return, Petitioner agreed that if the variance was granted, she would not "later seek a further reduced sentence pursuant to 18 U.S.C.

§ 3582(c)(2) if and when the two-level reduction is adopted and made retroactive by the Sentencing Commission." [*Id.*]. The PSR recognized the parties' agreement to this two-level downward variance [Doc. 347 at Page ID # 1053 at ¶ 52].

The Court imposed a below-Guidelines sentence of 70 months' imprisonment followed by three years of supervised release [Doc. 375]. Petitioner did not appeal; instead, she timely filed her 2255 Motion.

## II. STANDARD of REVIEW

### A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his or her judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353-54 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from [the face of] the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B. Standard for Ineffective Assistance of Counsel

Petitioner raises ineffective assistance of counsel issues. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's

performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his or her attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he or she must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that counsel's representation was objectively unreasonable, but also that the petitioner was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet this burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## III. ANALYSIS

Although difficult to ascertain, it appears that Petitioner claims her counsel was ineffective because Petitioner did not agree to the "enhancements" in the PSR [Doc. 450 at Page ID # 1663], her counsel did not object to role and obstruction enhancements, and the government "showed no factual evidence" to justify the role enhancement [Doc. 451 at Page ID # 1639]. Petitioner also argues an amorphous due process claim regarding the safety valve exception [Doc. 450 at Page ID # 1664].

### A. Enhancements

Petitioner asserts that she received enhancements totaling four levels, for her leadership role and obstruction of justice [Doc. 451 at Page ID # 1638]. While Petitioner did receive a two level adjustment for her role in the offense, no enhancement for obstruction of justice was applied [Doc. 347 at Page ID # 1048 at ¶¶ 19-20]. As Petitioner did not receive an adjustment for obstruction of justice, her counsel cannot be deemed ineffective for not objecting to it.

As to the role adjustment, Petitioner claims the United States offered no factual support for a role enhancement, but also states that she "was said to have given instructions or le[]d other individuals," [Doc. 451 at Page ID # 1639], thereby acknowledging that such evidence was

6

proffered in support of the enhancement.[2] Petitioner also acknowledges that her counsel made objections to PSR's inclusion of a role enhancement at sentencing and argued for receipt of a safety valve exception [Doc. 451 at Page ID # 1638-39]. As a result, counsel was not ineffective by failing to object to a role enhancement.

Also, as referenced in the PSR and argued by the government, evidence established that Petitioner directed Ms. Moore to conduct drug transactions and collect drug proceeds in exchange for drugs [Doc. 347 at Page ID # at 1047 at ¶ 10]. Such evidence is sufficient to establish Petitioner "supervised" at least one other person, as required by U.S.S.G. § 3B1.1. Accordingly, even if counsel did not object to the role enhancement, counsel cannot be ineffective in failing to make a meritless objection to the two level role enhancement nor could Petitioner be prejudiced. *See e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (holding counsel is not constitutionally ineffective for not pursuing meritless claims); *Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006) (holding an attorney is not ineffective for failing to raise a meritless objection); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.").

To the extent Petitioner may be alleging she received ineffective assistance because her counsel failed to argue for a minor role adjustment, her claim also fails. While U.S.S.G. § 3B1.2 provides for a reduction in the offense level if the defendant was either a minimal or minor participant in the criminal activity, the PSR found that Petitioner's role in the offense was not neutral, but was as a manager or supervisor. Whether or not Petitioner's counsel argued for a minor role adjustment, any failure to do so is not ineffective assistance because it would have been useless to make such an argument as Petitioner could not qualify for both an aggravating role and

---

[2] The hearing transcript is not transcribed and available in the record.

a mitigating role in the same criminal activity. That the Court found Petitioner to be a manager or supervisor consequently excludes a finding that she had a minor role in the offense. *See Id.*, *United States v. Linares*, No. 2:10-CR-00110-RLJ, 2016 WL 3951725, at *5 (E.D. Tenn. July 19, 2016).

### B. Due Process Claim

Petitioner's other claim appears to assert a due process challenge that: "BY NOT RECIEVING THE SAFETYVALVE, THIS GAVE ME MORE TIME FOR THE CRIME OFFENSE. WITHSO HAVING NOT RECIEVED THE DOWNWARD." [Doc. 450, Page ID # 1664] (capitalization, spelling, and punctuation in original). While repeating her request for some sort of safety valve reduction, Petitioner's filings provide no clear explanation for this claim other than her theory that she would have been eligible for the safety valve if she did not receive the role enhancement.

There are five conditions that must be met before a defendant is eligible for a safety-valve reduction. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). Unless all five conditions of the safety-valve Guidelines are met, district courts do not have discretion in applying an exception to the statutory minimum. *See United States v. Scruggs*, 436 F. App'x 617, 620 (6th Cir. 2011) (quoting *United States v. Bazel*, 80 F.3d 1140, 1142 (6th Cir. 1996)). The defendant has the burden of establishing each condition of the safety valve by a preponderance of the evidence. *United States v. Felix*, No. 16-5342, 2017 WL 4403320, at *3 (6th Cir. Oct. 3, 2017); *United States v. Pena*, 598 F.3d 289, 292 (6th Cir. 2010).

Safety-valve treatment allows a district court to impose a sentence below the statutory minimum, but only if it finds a defendant was not "an organizer, leader, manager, or supervisor of others in the offense." *See* 18 U.S.C. § 3553(f)(4); U.S.S.G. § 5C1.2(a)(4). Because the Court

8

found Petitioner was a manager or supervisor, she was not eligible for a safety valve reduction and her claim is without merit. *See Linares*, 2016 WL 3951725, at *5.

To the extent Defendant claims a sentencing error regarding the application of the safety valve (or consideration of her mental limitations), she waived her ability to pursue such claims in her plea agreement, wherein she waived her ability to pursue § 2255 motions or collateral relief claims except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to her by the time of the entry of judgment [Doc. 173 at Page ID # 371 at ¶ 11]. It is well-settled that such waivers are enforceable. *See e.g., Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (holding that "[w]hen a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."). Petitioner does not contend that her plea agreement or the waiver contained therein were not knowing or voluntary. In addition, at the change of plea hearing the Court determined that Petitioner knowingly and voluntarily entered her change of plea and plea agreement with full awareness of its consequences and the waivers contained therein [Docs. 226, 229]. Petitioner's continued pursuit of these claims, albeit now wrapped in a cloak of alleged ineffective assistance of counsel, appears to be a thinly veiled effort to relitigate the same issues addressed at sentencing by her counsel. Moreover, contrary to Petitioner's arguments, the Court properly determined she was not eligible for a safety valve reduction because of her supervisory role as addressed above.

Petitioner appears to focus her due process claim related to the enhancement and safety valve issues on an assertion that she was denied the right to a jury at sentencing with respect to application of a role enhancement based on the holding of cases such as *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Petitioner's claims in this regard fail for two reasons. First, *Alleyne* does

9

not apply retroactively to cases on collateral review. *See e.g.*, *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014). Second, *Alleyne* is inapplicable to the case at bar because Petitioner has not identified any judicial fact-finding that increased the *statutory* range of her punishment.

In *Alleyne*, the Supreme Court of the United States held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155. In this case, the Court's findings did not increase any *statutorily authorized* penalty, but rather increased Petitioner's *advisory Guidelines range*. Hence, even if *Alleyne* applied retroactively on collateral review, it would not provide Petitioner an avenue for relief. *See also United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013) (holding *Alleyne* did not extend *Apprendi v. New Jersey*, 530 U.S. 466 (2000) "to facts that do not increase the prescribed statutory penalties").

Likewise, Petitioner's arguments for an even lesser sentence because of her mild mental retardation, which were raised by counsel at sentencing and in objection to the PSR [see e.g., Doc. 334 at Page ID # 978] in spite of Petitioner's suggestion to the contrary, provide no basis for relief as the Court found Petitioner did not establish that her mental limitations existed to "an unusual degree" so as to distinguish her from typical cases [*see* Doc. 348 at Page ID # 1057]; s*ee also* U.S.S.G. § 5H1.3 (noting mental limitations warrant a below-guidelines sentence only to the degree that they "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.").

To the extent Petitioner seeks to contest the reasonableness of her sentence, her claim is not cognizable under § 2255 because it involves no jurisdictional or constitutional concerns. *See, e.g.*, *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) ("A brief consideration of the policy underlying collateral review demonstrates that nonconstitutional errors, such as mistakes in the

application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside the normal appellate system."). Because Petitioner has failed to allege—and the record is devoid of—any such defects, Petitioner's claims do not justify relief under § 2255.

An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo*, 178 F.3d at 782); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."). For the reasons articulated above, the Court finds that Petitioner is not entitled to an evidentiary hearing because all of her claims are either contradicted by the record or consist merely of conclusory statements devoid of supporting facts.

## IV. CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Petitioner is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, reasonable jurists could not find the assessment of her claims debatable, and the issues presented are not adequate to deserve encouragement to proceed further, a certificate of appealability **SHALL NOT ISSUE**.

## V. CONCLUSION

For the reasons discussed, a hearing is unnecessary and Petitioner's 2255 Motion [Doc. 450] will be **DENIED** and **DISMISSED WITH PREJUDICE**. Petitioner's motion for a status report concerning her 2255 Motion [Doc. 511] is **DENIED AS MOOT**.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE